Radmann vs. The Chicago, Milwaukee & St. Paul R. Co.

RADMANN, Appellant, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*October 17 — November 5, 1890.*

*Master and servant: Defective machinery: Court and jury.*

In an action for personal injuries alleged to have been sustained by reason of the want of repair of the machinery of a power grain shovel which the plaintiff was operating, it is *held* that the evidence (stated in the opinion) tended to show that the injuries were caused by a defect in such machinery which had existed for a sufficient length of time for the defendant to have known of it, and that it did not show that the plaintiff was guilty of contributory negligence. It was error, therefore, to direct a verdict for the defendant.

APPEAL from the Circuit Court for *Waukesha* County.

Action to recover damages for personal injuries sustained by the plaintiff while operating a grain shovel at one of the defendant's elevators in the city of Milwaukee. The facts will sufficiently appear from the opinion. At the close of the testimony the court directed a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff appeals.

*M. N. Lando*, for the appellant, to the point that it was error for the court to direct a verdict for defendant, cited, besides cases referred to in the opinion, *Weyburn v. Kipp*, 63 Mich. 79; *Gower v. C., M. & St. P. R. Co.* 45 Wis. 182; *Schomer v. Hekla F. Ins. Co.* 50 id. 575; *Sutton v. Wauwatosa*, 29 id. 21; *Hoye v. C. & N. W. R. Co.* 62 id. 668; *Strahlendorf v. Rosenthal*, 30 id. 675; *Behm v. Armour*, 58 id. 1; *McCarthy v. Thorn*, 5 N. Y. Supp. 917; *Hunt v. Walch*, id. 802; *Anderson v. M. & N. W. R. Co.* 39 Minn. 523; *Baldwin v. St. L., K. & N. W. R. Co.* 72 Iowa, 45; *Bowen v. C., B. & K. C. R. Co.* 95 Mo. 268.

*John T. Fish*, for the respondent.

ORTON, J. The facts are substantially and briefly as follows:

The defendant company owned and operated in the city of Milwaukee, among other elevators, elevator B for loading, unloading, storing, and shipping grain. The elevators are subdivided into stalls or divisions for unloading and dumping grain from cars. In order to unload the grain from the cars into elevator B, a certain shaft running through the entire length of the elevator is set in motion by a steam-engine, which shaft is provided at each stall or division with a pulley, round which is a coil of heavy rope, attached to a sort of a bifurcated chain of which the ends are fastened to a wooden shovel or scraper. The operator of said shovel has to take hold of it by two ears in the back of it, and pull it into the car to be unloaded, and, by so pulling, the rope yields and unwinds from the pulley, and follows the operator into the car, and then he sticks the shovel into the grain, and, by giving a slight pull or jerk on the rope above the chain, it sets in motion a certain clutch and catch, which causes the pulley on the shaft to pull the rope and rewind the same around the pulley by inverse motion, and thus moves the shovel with the grain out of the car into the dumping-bin. Any common laborer can operate such a shovel with ease if the machinery and gearing are in good and proper condition.

The plaintiff had been employed by the defendant to manage and work such a shovel in different stalls of said elevator, and had no trouble in operating the same; and afterwards, and on the day of the accident, he was employed to work in stall No. 8, in working one of the two shovels in that stall. The other shovel was worked by one Peter Hyland, who had no trouble in working it. All the shovels in the elevator except the one on which the plaintiff was employed, and the machinery attached to the same, worked easily and properly. The plaintiff testified, in substance, that the

shovel on which he was employed on that day did not work well. It was apparently out of order. If it is in order, the operator will give a little jerk on the rope, and the shovel at once starts, and the rope winds up on the pulley. At this time the plaintiff gave a little jerk on the rope, and it did not start, and he gave several jerks on the rope, and it did not work. The rope nearly all came down into the car, and in some way his right foot became entangled in the loose coils of rope, without his knowledge, when suddenly the clutch wheel caught the catch, and started the machinery, and the rope was swiftly wound up, dragging the plaintiff by that foot to where it was so twisted and mangled that it had to be amputated. The plaintiff had never had any trouble before in working a shovel, and did not know that this one was out of order when he began to work it. He could always before give a little jerk on the rope, and the shovel would start.

The said Peter Hyland, as a witness for the plaintiff, testified substantially as follows: He was working a shovel in the same stall. The shovel the plaintiff was working stopped and would not go. He told him to pull the rope, and he did so, and it stopped again, and he told him again to pull the rope, but it did not start, and then in a little while it started suddenly and tripped the plaintiff up. He could not say how long that shovel had been out of order, for he had not worked in that stall for two years. It did not work at this time. August Butzlof, another witness for the plaintiff, testified substantially as follows: He worked for the defendant in another elevator at the time, and before that he worked in the stall where the plaintiff was injured, three or four days. The shovel the plaintiff worked was then out of order. He did not know what was the matter with it. It stopped too often. Sometimes it worked well, and then it would stop. It was in that condition every time he worked in that stall. Sometimes, when it would

not start, he would stand behind the shovel, and give the rope slack a pull, and then it would sometimes start. He did not have to do that on any other shovel in any other stall or elevator. When it would not start, he gave it another pull, reaching over the shovel, but it would not start by holding the rope out, and he was compelled to slack the rope and shake it harder to get it in gear. His partner told him how to work it. Ignatz Patricus, a witness for the plaintiff, testified that he worked in that stall on the other shovel some time before, and began again to work in the elevators the day after the accident. That shovel did not work well then, and it got worse since. It worked well at first, and afterwards it did not work so well,— the machinery became out of order. The operator would have to pull the rope five or six times more to start it.

James S. Harvey, a witness for the defendant, and who had charge of the defendant's elevators, testified substantially that said shovel and its machinery were in order, and that, if there was any hitch in starting the shovel, it must have been the stiffness of the oil in the machinery. When asked if he heard the testimony of the plaintiff's witnesses as to the manner in which that shovel worked, he stated: "I don't believe the testimony." The other witnesses, employees of the defendant, testified substantially that the machinery was not out of order, and accounted for any failure to start readily by the stiffness of the oil. There was, however, no testimony to contradict in any other way the statements of the plaintiff's witnesses as to the manner in which the shovel worked. This is substantially the evidence in the case.

The stiffness of the oil can scarcely account for the defective working of this shovel as testified to by the plaintiff's witnesses, for that would have caused all the other shovels to have the same infirmity, which was not the case. If the testimony of the plaintiff's witnesses is true,— and

the question of its credibility is for the jury and not for the court to determine,— the machinery of that shovel was not in order, and was dangerously out of order. It did not work like, or as well as, the other shovels in the different elevators. What was the defect, or why it did not operate well, is not explained. It was not necessary that the plaintiff should know or explain it, if he proved that it was out of order and had been for a considerable period of time, and he seems to have so proved. The testimony of the plaintiff and of his three witnesses tended strongly to show that the machinery of that shovel was out of order, and yet the learned circuit court took the case from the jury and directed them to find a verdict for the defendant. This was certainly a very grave error. Unless he showed himself to have been negligent, the testimony in his behalf entitled the plaintiff to recover. There is no principle better settled than that the master is bound to furnish his servant with proper and safe implements and machinery or other appliances with which to do his work. The testimony did not show that the plaintiff was guilty of any want of care that contributed to his injury. He was standing in the loose wheat of the bin, and, in wallowing about with coils of rope all about him, he got his foot within it unawares, and, when the slack was taken up suddenly and quickly, he had no time to take it out, and while he was being dragged towards the machinery he could not extricate himself. At all events, the plaintiff's negligence was a question for the jury.

We are not apprised of the ground upon which the circuit court made the direction, and we are unable to discover any sufficient grounds for it. The circuit court is warranted in directing a verdict for the defendant only when the evidence for the plaintiff, giving it the most favorable construction it will reasonably bear, including all reasonable inferences from it, is insufficient to justify a verdict in his

favor. *Jackson v. Jacksonport*, 56 Wis. 310; *Sabotta v. St. Paul F. & M. Ins. Co.* 54 Wis. 687; *Fitts v. C. C. R. Co.* 59 Wis. 323; and many other cases cited in appellant's brief.

The testimony shows that the defect in the machinery, whatever it was, had existed for a sufficient length of time for the defendant to have known of it (*Strahlendorf v. Rosenthal*, 30 Wis. 675; *Behm v. Armour*, 58 Wis. 1); and the plaintiff should have been notified of it. The testimony shows for itself, and taking the case from the jury was obviously in violation of well-established principles and practice.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.