## EVER KRISP FOOD PRODUCTS COMPANY v. NEW AMSTERDAM CASUALTY COMPANY.

1. INSURANCE—BURGLARY—RECORD OF PROPERTY—EVIDENCE.
   Provision of burglary insurance policy that insured should keep records in such manner that the insurer can accurately determine therefrom the amount of the loss by necessary implication excluded mere notations on envelopes in which the money was contained as being sufficient alone to afford a basis for recovery under the policy for any loss sustained.

2. SAME—BURGLARY—EVIDENCE OF LOSS.
   Records of individual employees who had been permitted to leave money in employing company's safe for safekeeping, which records had been compared with notation on envelopes made by the bookkeeper the day before safe was burglarized. *held*, competent to show amount of such money lost.

3. SAME—BURGLARY—EVIDENCE OF LOSS—FORFEITURE.
   Clause of burglary insurance policy requiring insured to keep records in such manner that the insurer could accurately determine therefrom the amount of the loss would be so construed as to permit the insured to present its best available proof in order to prevent a forfeiture.

---

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 29 Am Jur, Insurance § 720 *et seq.*
[1-4] Sufficiency of bookkeeping to satisfy condition of insurance policy. 39 ALR 1443; 62 ALR 630; 125 ALR 350.

4. Same—Burglary—Amount of Loss—Evidence.

Records which insured under policy of burglary insurance had required its employees to keep as to deposits they were permitted to make in insured's safe for safekeeping *held*, sufficient to establish amount of loss for which judgment had been entered by trial court.

Appeal from Wayne; Webster (Arthur), J. Submitted October 6, 1953. (Docket No. 10, Calendar No. 45,795.) Decided November 27, 1953.

Action by Ever Krisp Food Products Company, a Michigan corporation, against New Amsterdam Casualty Company, a New York corporation, on burglary insurance policy. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Gvazda & Shere* (*Leroy G. Vandeveer,* of counsel), for plaintiff.

*Walter A. Mansfield* (*David S. DeWitt,* of counsel), for defendant.

Carr, J. During the summer of 1950 plaintiff was engaged in carrying on a food products business in the city of Detroit. On or about the 15th of June of that year unknown persons forcibly entered its plant and office, breaking open 2 safes and abstracting money therefrom. Of such money the greater part belonged to plaintiff. In addition thereto certain sums that employees of plaintiff had been permitted to leave there for safekeeping, under a definite arrangement to that effect, were lost, together with an estimated $250 in cash by way of uncollected payroll.

At the time of the burglary there was in force and effect an insurance policy issued by defendant to the plaintiff, providing for the indemnification of the assured for the loss of money and securities

caused by wrongful abstraction, burglary, or robbery within the premises. With provisions for extension of liability in certain cases we are not concerned in this case. The insurance policy covered not only property owned by the plaintiff, but also money belonging to others and held by plaintiff in any capacity. Subdivision B of the conditions of the policy read as follows:

"B. Ownership of property records. The insured property may be owned by the assured or held by him in any capacity whether or not the assured is liable for such loss or damage as is covered hereby, provided that the company shall not be liable for such damage to the premises unless the assured is the owner thereof or is liable for such damage thereto. In the event of claim hereunder involving property not owned by the assured, the company may adjust such claim either with the assured or with the owner or owners, and payment of such claim to such owner or owners shall constitute full satisfaction of such claim by the assured. If legal proceedings are taken against the assured to recover for such loss the assured shall immediately notify the company in writing and the company, at its own expense, may conduct and control the defense in the name and on behalf of the assured. The assured shall keep records in such manner that the company can accurately determine therefrom the amount of loss. In no event shall this policy cover any property owned by the United States government or held by the assured as postmaster."

Following the burglary plaintiff made demand on defendant for payment of the losses resulting therefrom. The parties were unable to reach an agreement, and in consequence suit was started. Thereafter defendant paid to plaintiff a sufficient sum to cover the money owned by the latter, which was stolen from the safe, together with damages to the premises resulting from the burglary, and the costs

1953] EVER KRISP F. P. Co. v. N. A. CAS. Co.    213

of suit incurred up to the time of such payment. Defendant denied liability because of the uncollected payroll items and also for moneys belonging to employees of the plaintiff that were allegedly in the safe at the time of the burglary and were wrongfully abstracted therefrom, claiming that plaintiff had failed to keep proper records as required by the provision of the policy above quoted.

At the conclusion of plaintiff's proofs on the trial defendant moved for a directed verdict in its favor. Such motion was taken under advisement.* Pursuant to agreement of counsel a special question was then submitted to the jury under Court Rule 37, § 7 (1945), said question being in the following form:

"Did the plaintiff make and keep a memorandum or memoranda in such a manner as to constitute a record of the transactions which a person who is of ordinary intelligence can understand, and from which he can ascertain the amount of the loss?"

To such question the jury answered affirmatively. In passing on the legal questions presented by the motion for a directed verdict the trial judge concluded that plaintiff had made a sufficient showing to entitle it to judgment for the moneys belonging to its employees which were feloniously taken from the safes, but that the proof with reference to uncollected payroll was insufficient to justify recovery. Judgment was entered accordingly, and defendant has appealed.

The testimony introduced on behalf of the plaintiff was sufficient to establish that the system of permitting employees who desired to do so to leave money in the safes was approved by plaintiff. The latter's sales manager testified that the practice made "for better relationships" with the employees.

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*).—REPORTER.

Plaintiff's bookkeeper was in immediate charge of such deposits. It was her custom when an employee brought in money for safekeeping to place it in an envelope bearing the name of the employee, on which she would note the amount deposited at the time and the balance. It is a matter of inference that a small number of employees only took advantage of the privilege allowed by the employer. Such transactions were not entered on the company books. However, at the request or direction of the bookkeeper, each employee making such deposits kept a record, and it appears that from time to time the records so kept were checked against the notations on the envelopes. It is in evidence that such a comparison was made on the day preceding the burglary.

At the time the money was stolen the envelopes bearing the notations of the bookkeeper were also abstracted. Subsequently one of them, with the end torn off and empty, was found on the floor. The claim presented by plaintiff to defendant was apparently based on the records kept by the employees as to their individual deposits, together with the recollection of the bookkeeper preparing the claim that such records were, when checked, in accord with the notations that she had placed on the respective envelopes.

It is the claim of defendant on appeal that the notations on the envelopes were not the character of record contemplated by the policy. Reliance is placed on the case of *Green's Hotel, Inc.,* v. *Commercial Casualty Insurance Company,* 4 NJ 517 (73 A2d 349). The policy of burglary insurance there involved contained a clause identical with the provision of the policy in the instant case on which defendant relies, namely:

"The insured shall keep records in such manner that the company can accurately determine therefrom the amount of the loss."

In that case it was the claim of the plaintiff that there was in its safe at the time of an alleged burglary not only money belonging to guests of the hotel but also other currency that was the property of plaintiff's officers. Such money was contained in an envelope bearing notations, presumably as to amount and ownership. As in the case at bar, the envelope was taken with the money. In consequence the plaintiff could present no record whatsoever with reference to it. On the theory that there was no reason why plaintiff might not have kept the same sort of a record that it maintained with reference to property of its guests, it was held that the notations on the envelope were not a sufficient compliance with the requirements of the policy. It was accordingly determined that the defendant was not liable for the money claimed to have been lost by plaintiff's officers. A similar conclusion was expressed in *Standard Accident Insurance Co.* v. *King Candy Co.* (Tex Civ App, May 20, 1949), 221 SW2d 349.

The trial court came to the conclusion in the instant case, as indicated by the opinion filed, that the notations on the envelopes were not in and of themselves sufficient to constitute a proper record within the meaning of the insurance policy. We think such conclusion was correct. Plaintiff should have anticipated that if the money was wrongfully abstracted from the safe the envelopes containing it would likewise be taken, so that no record would remain. The provision of the policy above quoted obviously contemplated not merely the keeping of a proper record but one from which the amount of loss might be determined. By necessary implication this excluded mere notations on envelopes in which the money was contained. In *Schlussel* v. *Commercial Casualty Insurance Co.*, 237 Mich 182, the records that plaintiff claimed he kept, and which were stolen from his safe at the time of the theft of the property

for which he sought indemnity, were wholly different in character than mere notations on envelopes as in the case at bar.

Appellant also urges that plaintiff could not rely on the records kept by its employees who made the deposits, and that the trial judge was in error in permitting it to do so. Such claim rests on the theory that each such employee kept a record solely for his own personal use and advantage. A fair interpretation of the testimony in the case discloses that such was not the situation. It must be borne in mind that these individual records were not kept by strangers, but rather by employees to whom the privilege of leaving money in these safes was granted. Doubtless the arrangement, as the sales manager testified, tended to promote a better relationship between the plaintiff and each such employee. It was thus for the benefit of both, and likewise the records kept at the request of the bookkeeper were for the benefit of both. Such system permitted checks, or comparisons, to be held from time to time for the purpose of obviating mistakes and consequent possible misunderstandings. It gave to each employee a record on which he was entitled to rely in the event that the records of the employer were lost. Likewise, in such event it afforded the employer the advantage of records which, because of the checks that were made, it could accept as accurate. It is a fair assumption from the evidence that such records were intended to supplement the notations on the envelopes in which the money was kept, to guard against mistakes, and the contingency resulting from a possible loss of the company's records.

Plaintiff relies on the general rule that an insurance policy will not be construed to permit a forfeiture if such result can be avoided. Attention is directed to the opinion in *Schlussel* v. *Commercial Casualty Insurance Co., supra,* where it was said:

"Although we fail to find, and counsel do not cite, any private home burglary insurance case which exactly quadrates with the situation presented here, under similar clauses in other lines of insurance largely relating to stocks of changeable merchandise in trade or business and therefore of greater significance, it is generally held that such clauses must be construed most favorably to the assured, in avoidance of forfeiture if possible, and if such books or accounts had been kept but were stolen or destroyed by fire, et cetera, through no participation or fault of the assured, it did not preclude him from recovery on producing the best available proof. That subject will be found instructively discussed, with citation of many authorities, in the annotations to *German Alliance Ins. Co.* v. *Newbern,* 28 LRA NS 337 (25 Okla 489 [109 P 826]). We think the question of whether or not plaintiff had kept such a book as he testified to, which without his fault was lost or stolen, became fairly an issue of fact to submit to the jury, as the court did."

See, also, as tending to support such rule of construction, *Exo* v. *Detroit Automobile Inter-Insurance Exchange,* 259 Mich 578; *Weller* v. *Cummins,* 330 Mich 286; *Mord* v. *New York Indemnity Co.,* 216 App Div 252 (214 NYS 693).

In *Green's Hotel, Inc.,* v. *Commercial Casualty Insurance Company, supra,* there was no record of any kind other than the notations on the envelopes in which the money. was contained. The case is therefore not in point on the question whether, in the case at bar, plaintiff may rely on the records kept by its employees. In *Rives* v. *Fire Ass'n of Philadelphia* (Tex Civ App, Nov. 28, 1903), 77 SW 424, also cited by appellant, the policy contained the following clause, which serves to differentiate it from the case at bar:

" 'And the assured under this policy hereby covenants and agrees to keep a set of books showing a

complete daily record of the date at which each bale of cotton covered under this policy was purchased or received, from whom purchased or received, in what compress, warehouse or yard stored, together with the original tag number or mark thereon, with its weight and classification, and a complete daily record of all shipments or sales, showing to whom shipped or sold, with date of shipment, from the warehouse, compress or yard so shipped, and the original number of marks, weight and classification of each bale, and in case of loss the assured agrees and covenants to produce such books and records, and in event of failure to produce the same, this policy shall be null and void.' "

In the case at bar the policy did not prescribe the form in which the assured should keep its records. The requirement imposed was merely that the system followed should permit the defendant in the event of loss to accurately determine the amount thereof from the records. It is not disputed that as to the moneys deposited by employees in the plaintiff's safes the records that plaintiff had caused to be kept by the employees were sufficient to establish the amount of loss, for which judgment was entered in the trial court.

We find no reversible error in the case, and the judgment is affirmed, with costs to plaintiff.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.