PELITSIE, Respondent, vs. NATIONAL SURETY CORPORATION OF NEW YORK and another, Appellants.

*March 5—April 3, 1956.*

424

For the appellants there was a brief by *Curley & Sheedy* of Milwaukee, and oral argument by *Patrick T. Sheedy.*

For the respondent there was a brief by *Wiernick & Zurlo,* attorneys, and *Clinton A. Boone* of counsel, all of Milwaukee, and oral argument by *Dominic D. Zurlo.*

CURRIE, J.   The policies of burglary insurance upon which suit was brought contain the usual standard exclusion clauses. The exclusion clause material to this appeal read as follows:

"This policy does not apply: . . .

"(d) Unless records are kept by the insured in such manner that the company can accurately determine therefrom the amount of the loss."

The sole issue on this appeal is whether the trial court should have determined as a matter of law that the plaintiff insured failed to substantially comply with said record-keeping clause of the policies. It is the defendants' contention that the plaintiff did so fail to comply with said clause as a matter of law, and, therefore, it was error for the learned trial court not to have granted defendants' motion for a directed verdict dismissing the action.

The facts with respect to this issue are not in dispute except in one minor particular. Plaintiff usually kept on hand a cash fund for cashing pay-roll checks for his patrons of approximately $3,000 or a little less. Whenever a substantial portion of such cash fund had been used for cashing such checks, plaintiff would take such checks to his bank and there

deposit them in a checking account, and at the same time he would write his own check upon such account to "cash" for the amount he deposited, receiving cash for the same with which he would replenish such cash fund. Such cash fund, together with any checks cashed therefrom, were locked up in the insured safe over night. It was plaintiff's custom at the close of business each night to total the amount of such cash and checks on the adding machine and write the total on a 3 x 5-inch scratch-pad. One reason why the total fluctuated from time to time was that the plaintiff sometimes paid bills with cash taken from such fund. At other times he paid bills out of the funds in the cash register. The cash-register funds were kept separate from the check-cashing fund and recovery is only sought in the instant action for the loss of the check-cashing fund.

Plaintiff's last bank deposit was made on February 5, 1954, and he testified that on the night of that day he totaled the amount of cash and checks on hand in the fund in question and found the aggregate to be $2,922. He further stated that he, together with his bartender, repeated this process at closing time on the evening of February 9, 1954, and arrived at the same total of $2,922, which total he wrote on a blank page of the scratch-pad. No attempt was made to arrive at a separate total for the cash and the checks, but plaintiff's best guess as to the amount of the checks, apart from the cash, was $600 to $800.

On the morning of February 10, 1954, after the burglary had been discovered and the police called, a claims adjuster for one of the two defendant Insurance Companies called. Plaintiff testified that he then had in his possession such scratch-pad notation as to the total being $2,922. On the other hand, the adjuster testified that he inquired of the plaintiff as to the amount of checks and cash which were burglarized from the safe and that plaintiff then took a small

blank scratch-pad and wrote a figure of approximately $2,800 or $2,900 on it and then discarded the sheet on which such total was written. Plaintiff further testified that after the adjuster left plaintiff looked for the scratch-pad sheet and could not find it. Such conflict in the testimony must be resolved in plaintiff's favor in considering whether it was error for the trial court to have failed to direct a verdict. This is because a verdict could only be directed against plaintiff if plaintiff's evidence, giving it the most favorable construction it will reasonably bear, was insufficient to justify a verdict in plaintiff's favor. *Radmann v. Chicago, M. & St. P. R. Co.* (1890), 78 Wis. 22, 26, 47 N. W. 97.

Plaintiff further testified that he recouped either $180 or $182 of such loss by having personally remembered the details regarding two of the pay-roll checks that had been cashed, and notifying the drawers thereof. As a result the drawers stopped payment on the originals and paid the plaintiff the amount of such two checks. It is apparent that the jury arrived at its figure of $2,740, as being the amount of loss, by subtracting the sum of $182, representing the amount so recouped, from the total of $2,922.

Many cases have arisen where the courts have been called upon to construe record-keeping clauses identical with, or similar to, those contained in the two policies issued to the plaintiff by the defendants, and to determine whether there was compliance by the insured with such clauses. For such authorities, see 5 Appleman, Insurance Law and Practice, p. 107 *et seq.*, secs. 3025–3027; 5 Couch, Cyc. of Insurance Law, p. 3592 *et seq.*, secs. 1032–1032a; and annotations in 39 A. L. R. 1443, 62 A. L. R. 630, and 125 A. L. R. 350. The one Wisconsin case dealing with the construction of such a clause involved the burglary of merchandise, and is of no particular assistance in deciding the issue with which we are confronted in the instant case. *Max L. Bloom Co. v. United States C. Co.* (1927), 191 Wis. 524, 210 N. W. 689.

One of the best statements of the applicable principles of law with respect to interpreting such bookkeeping policy clauses and determining whether there has been compliance therewith is that set forth in 45 C. J. S., Insurance, p. 576, sec. 658, as follows:

"Such a provision must be given a reasonable interpretation, consistent with its design to protect insurer against fraudulent and excessive claims, and in view of the character of the business and the circumstances connected with it. A substantial compliance therewith is sufficient. No particular form of books is required; the requirement is satisfied if the books and records produced are sufficient to show the real state of facts and to enable insurer to determine with reasonable accuracy the amount of its liability, and the books need not be such as to enable insurer to ascertain the exact articles stolen and the price thereof. Absolute accuracy, or such a system of bookkeeping as would satisfy an expert accountant, is not required; yet there must be sufficient written evidence to enable a person of ordinary intelligence familiar with accounts, to determine with accuracy the extent of the liability, without the supplying of essential details from the memory of an interested party. It is sufficient if the books and records are such that, with the assistance of those who kept them, or understood the system, the amount of the loss can be ascertained, or if a jury, as practical men, can determine the loss from the books and accounts."

It is true that where the safekeeping of money alone is involved, a much more meager record kept of the contents of the insured safe will constitute substantial compliance by the insured than in the case of a burglary policy covering a stock of merchandise. As was stated in *Fleishman v. Royal Indemnity Co.* (Pa. Com. Pl. 1948), 63 D. & C. 620, 623:

"Only the contents of plaintiff's safe were insured and in this particular case only cash is involved. The books of account therefore need not be as intensive or as extensive as those necessary to determine the value of other forms of personal property."

However, it has been held that even in a situation involving the loss by burglary from a safe of money only, the writing of the amount thereof on the outside of the envelope in which it was placed was insufficient compliance with a bookkeeping clause in the policy of burglary insurance similar to the clause in the instant policies. *Green's Hotel, Inc., v. Commercial Casualty Ins. Co.* (1950), 4 N. J. 517, 73 Atl. (2d) 349; *Ever Krisp Food Products Co. v. New Amsterdam Casualty Co.* (1953), 338 Mich. 210, 61 N. W. (2d) 172; and *Standard Accident Ins. Co. v. King Candy Co.* (Tex. Civ. App. 1949), 221 S. W. (2d) 349. We find it unnecessary to determine whether plaintiff's system of writing the total of his check-cashing fund on the scratch-pad would have been sufficient compliance if such fund had consisted entirely of cash at the time of the burglary. This is because such fund then consisted of checks as well as cash.

In order to have compliance with the bookkeeping clause of the policy with respect to the pay-roll checks cashed by plaintiff, the minimum record required to be kept by him should not only list the amount of each check separately but should contain such additional data as would enable either the plaintiff insured, or the Insurance Companies subrogated to his rights, to make claim upon the drawer of the check. A listing of the name of the drawer and of either the name of the payee or the number of the check would in most cases be adequate for such purpose.

A thief of a negotiable instrument obtains no title thereto. While in theory it is possible for a *bona fide* purchaser for value of a negotiable instrument, such as a check indorsed by the payee, from a thief to obtain good title as against the holder for value from whom it was stolen, it is difficult to imagine such a purchaser being able to establish that he acquired the instrument in the usual course of business and in good faith. See sec. 116.57, Stats., for the definition of a holder in due course. Furthermore, a burglar stealing checks

from payees, or holders in due course, as an incident to stealing cash, seldom attempts to negotiate the same because of the danger that by such an attempt he will thereby reveal himself as the burglar.

Because plaintiff happened to remember sufficient facts about two of the checks which were stolen as a result of the burglary, he was able to prevail upon the drawers to stop payment on the same and issue duplicate checks, thus reducing his loss by $182. If plaintiff had kept adequate records with respect to the other checks stolen, the loss could have been minimized still further. This in itself demonstrates the insufficiency of plaintiff's record-keeping.

We, therefore, hold that there was a failure on the part of the plaintiff to keep such records as would enable the defendant Insurance Companies *"to accurately determine therefrom the amount of the loss,"* which breach of condition prevents plaintiff from recovering upon the policies.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.