United States Fidelity & Guaranty Company, Respondent, v. Milwaukee & Suburban Transport Corporation, Appellant.

*October 4—October 30, 1962.*

2

4

For the appellant there was a brief by *Kivett & Kasdorf*, attorneys, and *John M. Swietlik* of counsel, all of Milwaukee, and oral argument by *Mr. Swietlik*.

For the respondent there was a brief by *Lowry, Hunter & Tikalsky*, and *Donald J. Tikalsky* of counsel, all of Waukesha, and oral argument by *Donald J. Tikalsky*.

BROWN, C. J.   The testimony of Ruby Keys, a passenger in the car, is that Mrs. Weatherall, the driver of the car, approached Forty-Ninth street and put on her left-turn signals. Mrs. Keys said that the driver of the car saw the bus stopped at the intersection, and then she pulled into the intersection to complete her left-hand turn. The bus then pulled away from the corner, and the driver of the car stopped south of the center line of Burleigh street in the lane of the oncoming truck.

The testimony of the truck driver generally substantiates that of Mrs. Keys. He testified:

"As I approached the bus, the car was coming up and it come to the corner of Forty-Ninth street, and it started to make the left-hand turn going south, and as I come into the intersection, the bus started to move ahead, and when I noticed this . . . I slammed on the brakes, and the car come to a stop in my lane of traffic, and when I slammed on the brakes, it was icy, and I slid into the car, . . ."

There is other testimony in the record that supports the inference that the driver of the car began to make the left-hand turn before the bus left the corner of Forty-Ninth and Burleigh.

After the close of this testimony the court denied a motion for nonsuit. We have held that a motion for nonsuit is equivalent to a demurrer to the evidence:

"In passing upon such motion, it is incumbent upon the court to view the evidence in a light most favorable to the plaintiff, and the court must give the plaintiff the benefit of the most-favorable inferences that can reasonably be deduced therefrom. [Case cited.]" *Wiehert v. Piccione* (1956), 273 Wis. 448, 450, 78 N. W. (2d) 757.

After the close of the testimony appellant moved the court for a directed verdict, but this motion was denied.

In ruling upon a motion for a directed verdict, the trial court was required to construe the evidence most favorably to the plaintiff. *Ryan v. Cameron* (1955), 270 Wis. 325, 327, 71 N. W. (2d) 408. If there is conflicting testimony it must be resolved in plaintiff's favor also in considering whether it was error for the trial court to have failed to direct a verdict against the plaintiff; a verdict against a plaintiff can be directed only if, in the most-favorable construction, plaintiff's evidence is insufficient to justify a jury verdict in plaintiff's favor. *Pelitsie v. National Surety Corp.* (1956), 272 Wis. 423, 76 N. W. (2d) 327. The record shows that the plaintiff's testimony, in the most-favorable light that it will reasonably bear, is sufficient to justify a verdict in its favor. Consequently, the conflict of

testimony does not destroy the inferences which were favorably drawn in plaintiff's favor.

Viewed in the light most favorable to plaintiff and with the most-favorable inferences which can reasonably be drawn from it, the evidence is sufficient not only to present questions of fact for determination by the jury but also would justify a verdict for plaintiff if the jury resolved those issues in plaintiff's favor.

Consequently, we find no error in the denial of appellant's motions for nonsuit and for a directed verdict.

Thereupon the case went to the jury, which returned a verdict finding that:

The bus driver was causally negligent in failing to yield the right-of-way to the private car and in lookout. He was found not guilty of negligence as to deviating from his traffic lane in pulling away from the curb or as to giving a signal.

The driver of the car was found not negligent in each of the respects inquired into, namely, in lookout and as to giving the oncoming truck a reasonable opportunity to avoid a collision. Two jurors dissented in the answer to the lookout question.

The driver of the truck was found causally negligent in management and control and in failing to yield right-of-way to the car. One of the dissenters on the question of lookout of the car's driver also dissented to the answer of the yielding of right-of-way by the truck. The jury absolved the truck driver from negligence as to speed, as to lookout, and as to passing at an intersection.

On the question of comparative negligence, the jury attributed 50 percent of the causal negligence to the bus driver and 50 percent to the truck driver. Two jurors dissented from this comparison, and they are not the same two which dissented in the answers to negligence questions.

The verdict determined that the bus was damaged in the amount of $451.14.

The jury also found that the amounts paid in settlement by the insurer of the truck for injuries were reasonable, as follows: To Ida Lang, a passenger in the bus, $5,000; to Ella Smith, a passenger in the bus, and her husband, $650; to Ruby Neff, a bus passenger, and her husband, $250; to Ruby Keys, a passenger in the private car, and her husband, $200.

The civil court entered judgment on the verdict, which judgment also dismissed the counterclaim of the owner of the bus and awarded to the insurer of the truck and against the bus company $3,050 damages plus interest of $545.50 and $418.01 costs. The appeal to the circuit court resulted in affirmance of the civil court judgment plus interest from the date of the civil court judgment.

The appellant considers the trial court committed reversible error in giving the following instruction to the jury concerning the standard of care of common carriers:

"Members of the jury, in regard to this question, a common carrier such as a bus is required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, for the safety of its passengers in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business.

"Expressing the rule in other terms, the law imposes on carriers of passengers for hire, the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such business under the same or similar circumstances."

Appellant contends this instruction concerning the standard of care of common carriers is erroneous because the test of ordinary care is as this court expressed in *Ormond v. Wisconsin Power & Light Co.* (1927), 194 Wis. 305, 308, 216 N. W. 489:

"The carrier is not an insurer of the safety of its passengers. It is liable to them only for ordinary negligence, which means simply a want of ordinary care, as that term is measured with reference to the duty of common carriers."

However, appellant ignores a certain statement of the court in the *Ormond Case* which appears prior to the above-quoted material. In reference to the ordinary care required of common carriers the court said: "To constitute ordinary care it must be the 'highest degree of care reasonably to be expected from human vigilance and foresight.' "

Therefore, the ordinary care of a common carrier is the highest degree of care reasonably to be expected from human vigilance and foresight, and the failure to exercise this degree of care results in ordinary negligence. Consequently, the instructions are proper and do not create a higher degree of care than that which ordinarily is imposed on common carriers in the facts of this case.

The appellant charges reversible error in certain other instructions given by the trial court. Even if we conceded that errors did occur when the trial court read certain statutory provisions to the jury, when the testimony as a whole did not show that there were any facts from which to infer the particular statutes read by the court were applicable, we do not consider them prejudicial. Sec. 274.37, Stats., states:

"JUDGMENTS; APPLICATION TO REVERSE OR SET ASIDE; NEW TRIAL; REVERSIBLE ERRORS. No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury . . . unless in the opinion of the court to which application is made, after an examination of the entire action . . . it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."

The first misdirection pointed out by the appellant is the instruction to the jury concerning the bus driver's management and control:

"Members of the jury, in regard to this question, you are also instructed that when a driver is confronted with another vehicle invading his lane of travel, proper management and control may require turning so as to avoid striking such vehicle, instead of merely attempting to stop."

There is no testimony in the record indicating that the bus driver was negligent as to management and control. To give this instruction to the jury concerning management and control of the bus driver was error. However, it was not prejudicial. The court did not include any question concerning management and control of the bus driver in the special verdict. The only question which involved bus management and control at all was that of the bus' failure to yield right-of-way and the manner in which the bus pulled out from the curb. The jury could not possibly be misled by the instruction on the right-of-way question, and in respect to the manner in which the bus left the curb the jury found the bus driver not guilty of negligence, so no prejudice arose from the instruction.

Error is claimed by the appellant in the trial court's instruction on the bus driver's duties to signal, and also on deviation, lookout, and passing. In connection with Question No. 1 of the special verdict pertaining to the bus driver's negligence, the trial court read sec. 85.16 (2), Stats. 1955, relating to rules of passing and the duty to first ascertain whether such movement can be made with safety to other vehicles approaching from the rear. As the appellant correctly contends, there is no testimony that the bus driver was passing anyone, or that he was deviating from his lane. This instruction, therefore, constitutes error because it does

not pertain to any question submitted in the special verdict. This error, however, is not deemed prejudicial to appellant. The appellant contends otherwise because the bus driver was found negligent as to lookout and the statute cited by the court dealt with lookout to the rear. This contention cannot be sustained for there is evidence of negligent lookout to the front. Moreover, appellant requested an instruction on passing. No injustice occurred here merely because the court read an inapplicable statute.

Upon request from respondent's counsel during the giving of instructions to the jury, and over an implied objection by appellant's counsel, the court read sec. 85.18 (10), Stats. 1955, concerning the right-of-way of moving vehicles over parked vehicles. Appellant complains that this reading was prejudicial error because it was read in connection with the failure of the bus driver to yield the right-of-way to the left-turning car. Appellant contends the statute applicable to the yielding of the right-of-way to the car is sec. 85.18 (5), Stats. 1955. Although the jury did find the bus driver negligent with respect to his failure to yield the right-of-way to the car, the reading of the inapplicable statute did not constitute prejudicial error. The court did read sec. 85.18 (5), Stats. 1955, to the jury, and no question was submitted in the special verdict concerning the yielding of the right-of-way to the oncoming, overtaking truck.

There is an inconsistency in appellant's position that the trial court erred in its failure to include a question in the special verdict concerning the driver of the car's negligence in giving a left-hand turn signal. In its brief appellant repeatedly states there is no issue as between the driver of the bus and the driver of the car and any inquiries therein are not germane to the case. Also, appellant does not dispute that when its counsel argued this case before the jury counsel pleaded with the jury to find the driver of the car free

of negligence. These inconsistencies substantially discredit any merit appellant's contention may have had.

The trial court permitted plaintiff's counsel in his opening statement to inform the jury of the amount of settlements the plaintiff, Guaranty Company, paid to injured parties. Appellant's counsel objected to these statements and the admission of the releases into evidence and into the jury room. Appellant now claims it was reversible error to allow the amounts of settlement payments into evidence.

This action involved contribution on the part of appellant and in such an action issues are raised as to the reasonableness of the settlements either party has had with third parties. If the right of contribution exists and there has been a release given in settlement of a claim, the joint tort-feasor is liable in contribution. The joint tort-feasor's liability is based in part on the reasonableness of the settlements. To find whether the settlements were reasonable is properly within the scope of the jury. Any competent evidence is admissible showing the amounts of the settlements or their reasonableness and, likewise, their unreasonableness.

Plaintiff insurer of the truck, by mentioning the amounts of settlements in its opening statements, did not prejudice appellant since these statements solely concerned the issue of the reasonableness of the settlements involved. To admit releases into evidence for purposes of showing the actual amounts so that the jury can pass on their reasonableness is proper, for such evidence is competent.

Appellant also asserts in this connection that it was reversible error for the court to use the words "advantageous settlement" in its instruction rather than the use of the words "reasonable settlement." This assertion is without merit. The term "reasonable" and "advantageous" in light of the context in which they were used have the same

meaning. See 36 Words and Phrases, Reasonable (perm. ed.), p 412.

Appellant contends that a new trial should be granted because the special verdict was not agreed to by five sixths of the jurors as required by sec. 270.25 (1), Stats.:

"A verdict agreed to by five sixths of the jurors shall be the verdict of the jury. If more than one question must be answered to arrive at a verdict on the same cause of action, the same five sixths of the jurors must agree on all such questions."

In the questions relating to the negligence of the driver of the private automobile, 10 jurors agreed that she was not guilty of any negligence. This made a complete verdict as to her and the dissents of the remaining two jurors are immaterial. *Augustin v. Milwaukee E. R. & T. Co.* (1951), 259 Wis. 625, 632, 49 N. W. (2d) 730; *Scipior v. Shea* (1948), 252 Wis. 185, 190, 31 N. W. (2d) 199.

In respect to the causal negligence of the bus driver, the jury was unanimous in deciding that he was guilty in failure to yield right-of-way and in lookout. In respect to the causal negligence of the truck driver, the jury was unanimous in deciding that he was guilty in management and control; and in failure to yield right-of-way to the car, 11 jurors found him guilty, while Juror Petran dissented. These findings gave a complete verdict of some causal negligence on the part of these two drivers, as in *Augustin v. Milwaukee E. R. & T. Co., supra.* The present action was tried before the rule announced in *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105, became effective, so at that time contribution between joint tort-feasors was not measured by their comparative negligence. The rule then was that joint tort-feasors were equally liable for contribution to defray the damage which together they

have caused. It is immaterial *to the question of contribution* in this case what the proportions of their causal negligence may be.

It is otherwise, however, when we reach the counterclaim of the bus against the truck for the damage which the truck inflicted on the bus. Any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. Sec. 331.045, Stats. Therefore, in the matter of the bus' counterclaim, the comparison of causal negligence is material. The verdict's comparison was 50 percent of the causal negligence to the bus and 50 percent to the truck, but Jurors Witt and Bresnahan dissented. To have a complete verdict on the comparison issue there must be at least 10 jurors in agreement not only upon the existence of causal negligence but also upon the comparison.

In *Strupp v. Farmers Mut. Automobile Ins. Co.* (1961), 14 Wis. (2d) 158, 162, 109 N. W. (2d) 660, with cases therein cited, we held:

"The verdict was defective as to the essential liability questions. Ten jurors agreed that both drivers were causally negligent, but only nine of those 10 agreed on the comparison. '. . . If more than one question must be answered to arrive at a verdict on the same cause of action, the same five sixths of the jurors must agree on all such questions.' Sec. 270.25 (1), Stats.
"When a comparison of negligence is called for,
" '. . . it is necessary for at least the same 10 jurors to agree on every question that it is necessary for them to consider in answering the question of comparative negligence. . . . the same 10 jurors must agree as to the items of causal negligence found and the comparative effect of the causal negligence of the parties in producing the resulting damages.' "

In the present verdict one juror dissented on a causal-negligence question and two others dissented on the com-

parison. There were then only nine jurors who agreed on the two questions which it was necessary for them to consider upon trial of the counterclaim.

The verdict, then, was defective upon the issue of the counterclaim. This defect can affect, of course, only the bus' counterclaim. Whether it affects it at all is the next question for us to consider.

The verdict determined that the truck damaged the bus in the sum of $451.14. The learned trial court dismissed the bus' counterclaim upon the merits. No reason was given for the dismissal. The learned circuit court held that there was no competent evidence to support the jury's award to the bus and the question of its damage should not have been included in the verdict. With that we agree. Accordingly, a defect in the verdict upon the bus' comparative causal negligence becomes immaterial, since without competent proof of damage there could be no recovery by the bus, either in full or diminished. The circuit court did not elaborate its reasons beyond saying that the record does not contain competent proof of the damage to the bus.

We, too, have studied the record. The testimony in support of the claim for damage to the bus was given by a Mr. Morlock, shop accountant of the appellant-owner of the bus. Morlock identified Exhibit 14, dated April 19, 1955, which purported to be a compilation of costs incurred in repairing the bus. He testified as summarized in appellant's appendix:

"I don't recall whether or not I actually saw this particular bus in the shop. Exhibit 14 is a list of items that were repaired on this bus. The materials listed on Exhibit 14 were drawn on requisition forms, and the labor was accumulated, based on time cards which developed on the job. I do not personally supervise each of these items myself. This exhibit was typed up by the office girl, comes, comes over my desk and I sign it. I don't check each of these

items to make sure they correspond with the requisition in each case; however, the individuals working under me who accumulate this information are responsible people who follow regular procedure."

He identified Exhibit 15, which is a form inspection report, made out on February 28, 1955, and signed by appellant's shop foreman. It shows only that the bus came into the shop for repairs on that date with its left rear corner pushed in. There is nothing on it pertaining to any labor, material, or cost of them in making the repairs.

Exhibit 14 states: "Case No. 11705. The actual cost of repairing gas bus No. 809 damaged in collision February 28, 1955, was as follows:" Then follow numerous items of labor and material, which total $451.14. The exhibit is addressed to a Mr. M. J. Thompson with a carbon copy to the "Claim Dept." and is signed by Mr. Morlock.

The only way in which this evidence could be admitted would be by compliance with sec. 327.25, Stats., which reads:

"ENTRIES IN THE USUAL COURSE OF BUSINESS. Entries on account books, cards, sales slips, loose-leaf sheets or in a book or other permanent form (including those mentioned in secs. 327.24 and 328.24) in the usual course of business, contemporaneous with the transactions to which they relate and as part of or connected with such transactions, made by persons authorized to make the same, may be received in evidence when shown to have been so made upon the testimony either of the person who made the same, or if he be beyond the jurisdiction of the court or insane, of any person having custody of the entries, and testifying that the same were made by a person authorized to make them in whose handwriting they are, and that they are true and correct to the best of his knowledge and belief. In case such entries are, in the usual course of the business, also made in other books and papers as a part of the system of keeping a record of such transactions, it shall not be necessary

to produce all of the persons who were engaged in the making of such entries; but before such entries are admitted the court shall be satisfied that they are genuine and in other respects within the provisions of this section. This section shall apply to all entries made in the regular course of business whether or not they are the records of one of the parties to the action or relate to transactions between such parties and whether or not the party against whom they are used had any knowledge of or acquiesced in the making of such entries and in criminal as well as in civil cases or proceedings."

Exhibit 14 accumulates and arranges a variety of entries made on timecards, and requisitions for materials made on requisition forms. None of those entries were produced, nor was anyone called as a witness who made such entries, or had custody of the entries and there was no showing that any such person was beyond the jurisdiction of the court or insane. In *Rupp v. Travelers Indemnity Co.* (1962), 17 Wis. (2d) 16, 22, 115 N. W. (2d) 612, we said:

"We cannot interpret the section, no matter how liberally, so as to excise from the statute the express requirement that entries must be identified by the testimony of the entrants if it is not shown they are beyond the jurisdiction or insane."

A reading of the statute brings to notice a provision that under certain circumstances, which were not present in the *Rupp Case,* business entries may be admitted in evidence although the makers of the entries do not testify concerning the entries but this exception does no more than to allow the entries to be admitted, conditions being met, without the actual presence and testimony of the maker of the entry. It does not obviate the requirement in evidence of the entry itself but serves to admit the entry in evidence without its identification by the actual maker. So, here, no entry bear-

ing upon work done or materials furnished or the cost thereof was produced or offered. There is only a statement by the shop accountant that there actually were entries made by various persons, which were collected and tabulated by someone else and the witness, although he has no personal knowledge of the facts, believes that Exhibit 14 is an accurate compilation of such entries because the several people who made the entries were skilled and trustworthy. In that state of affairs the opposing party has no opportunity to examine the entries—the data from which Exhibit 14 was compiled—to find out if the undisclosed entries are what they purport to be.

It is unnecessary to add that Exhibit 14 is not itself an entry made contemporaneously with the transactions to which they relate but that it appears to be a statement prepared for prosecuting a claim.

Accordingly, we concur with the learned circuit court in holding that there is no competent evidence to support the amount of damage suffered by the bus and the counterclaim for it was properly dismissed. Therefore the questions and answers in the verdict referring to comparative negligence on the counterclaim issue turn out to be immaterial.

By its complaint respondent alleged that it paid $6,100 to various persons and demanded contribution for such payments from appellant as a joint tort-feasor. During the trial defendant Allstate paid respondent $1,850 in return for which respondent dismissed its complaint against Allstate. The court rendered judgment against appellant for $3,050, the amount it was liable in contribution, which was one half of the $6,100 paid by respondent in settlements.

Appellant contends this assessment of damages was error because the amount respondent actually had to pay in the settlement of claims was reduced by the amount it received from Allstate, and consequently the amount appellant is

liable in contribution should thereby be proportionately reduced.

Contribution is based upon common liability of joint tortfeasors to the injured party. *Farmers Mut. Automobile Ins. Co. v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 512, 519, 99 N. W. (2d) 746. Allstate was not liable in contribution because its insured was not a joint tort-feasor. Consequently, the payments made by Allstate to respondent had no bearing on the liability of respondent as joint tortfeasor. Since respondent's liability was not diminished by the payments made to it from a nonnegligent party, these payments did not reduce appellant's liability as a joint tortfeasor. Therefore, appellant cannot take advantage of these payments to reduce its liability in contribution because they have no relation to its liability as a joint tort-feasor. Consequently, the assessment of damages for contribution by the court for $3,050 was proper.

On August 13, 1959, respondent served upon the appellant a notice of taxation of costs returnable on August 18, 1959. Appellant's counsel admits he appeared and objected to the taxing of costs. However, appellant claims that subsequent thereto, and without notice or service on appellant, respondent on September 22, 1959, took certain affidavits and an order regarding taxing payment of expert witnesses first to the civil court which were signed by the judge. Appellant now claims it was not given proper notice of the taxing of these fees and such failure renders the judgment void.

The record convinces us otherwise. It shows that counsel for appellant along with notice served on August 13, 1959, the bill of costs and an affidavit attached thereto were served on him. The attached affidavit contained among other witness fees the names and the amounts of the expert witness

fees that the judge later assessed against it. Apparently the deputy clerk inadvertently failed to tax the cost of these expert witness fees against the appellant. When the trial judge corrected this mistake it did not prejudice appellant, for the total amount of the costs in either case was the same.

Appellant asserts the civil court did not have jurisdiction over the subject matter of contribution because the civil court has no equity jurisdiction, and contribution is an equitable remedy.

Contribution between joint tort-feasors though of equitable origin is now enforced in an action at law.

"The right to contribution was first recognized and enforced in courts of equity, and for a long time the right could not be enforced in a court of law." *Wait v. Pierce* (1926), 191 Wis. 202, 226, 209 N. W. 475, 210 N. W. 822.

The right to contribution between tort-feasors in Wisconsin as in a few other states has been recognized as a common-law right. *State Farm Mut. Automobile Ins. Co. v. Continental Casualty Co.* (1953), 264 Wis. 493, 496, 59 N. W. (2d) 425, states:

"Although the conception of the common law in most jurisdictions is to the contrary, the right to contribution between tort-feasors in Wisconsin, as in a few other states, has been recognized as a common-law right."

Consequently, at the date of hearing this case the civil court of Milwaukee county did have jurisdiction over the cause of action for contribution.

We conclude that the judgment of the circuit court should be affirmed.

*By the Court.*—Judgment affirmed.