HOLBORN, Special Administratrix, Respondent, vs. COOMBS, Appellant.

*November 8—December 6, 1932.*

For the appellant there were briefs by *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *William H. Spohn* and *Myron Stevens*.

For the respondent there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *D. V. W. Beckwith*.

FAIRCHILD, J.  If the material incidents of a collision between two cars are so veiled by reason of death of witnesses or their loss of memory that no evidence of any convincing influence can be found pointing to fault in the defendant, the plaintiff, in the nature of things, cannot produce the necessary evidence to form a reasonable basis for a verdict in her favor.   Unless under the evidence produced at the trial the respondent has shown that this collision occurred on the east side of the middle of the highway, all her contentions are without support and the basis for the jury's finding

of negligence on the part of the appellant does not exist. So our inquiry is directed to the question as to whether or not there is evidence showing, or tending to show, that the appellant's car crossed over the dividing line and entered the path of the car driven by Edge. Two of the occupants of Edge's car were killed and the driver of the appellant's car was so injured as to have no recollection of the events leading up to the crash or of the crash itself.

· The appellant, who was in the Chrysler car, and Edge, who was driving the Essex, the two cars concerned, are the only human witnesses to whom we may look for an account of what occurred at that time. Edge was called as a witness by the plaintiff. He testified to being on his side of the road and among other things was asked:

"Q. And how long after you first observed the Coombs car was it before the accident happened? A. Well, it was so quick I couldn't judge it by time.

"Q. Did you do anything when you saw the Coombs car approaching? A. No sir, just let up on the gas, that is all I did.

"Q. Do you know whether or not you put your foot on the brakes? A. I don't remember.

"Q. Do you know whether or not you guided your car to one side or the other? A. I would say I did not."

Careful consideration must be given to all the testimony and particularly to the testimony given by Edge; for his account concerning the matter is the only source in which can be found an opinion or theory sustaining respondent's case. All marks and signs indicating the collapse or breaking of the cars were indisputably on the other as distinguished from Edge's side of the road. Still a jury question exists as to the negligence of appellant if Edge's testimony is not overthrown by the controlling physical facts. We are not for the present on this branch of the case considering the impeaching testimony concerning Edge's conviction of more

or less serious offenses, or the fact that he might have been somewhat affected by his indulgence in intoxicating liquor during a short period of time before the unhappy event, but are giving his testimony the fullest scope and greatest possible bearing it can be entitled to. His claim is that while driving toward Madison and when in or about to make a curve, he drove in a normal way on the right side of the road, that he didn't guide his car to either one side or the other, and the collision occurred. Could the matter rest here, there would be a sufficient showing to take the case to the jury; but it is impossible to overlook the unmistakable evidence of the way in which the two cars came together, and when the full effect of this is considered it becomes evident that Edge's explanation of the meeting of the two cars is not the true one. The points of impact on each car are clearly established, and they show, when read in the light of the laws of physics, that the collision occurred on the west side of the road, while appellant's car was in its proper lane, and while Edge's car was traveling over that lane, though at an angle, immediately across defendant's path.

The jury found there was no excessive speed. There is testimony that Edge had been traveling at about thirty and appellant from thirty to thirty-five miles per hour. It is undisputed that, an instant before the collision, appellant passed without difficulty an oncoming car driven by Mr. Sidwell. This fact is not of itself enough to disprove or destroy as evidence the statement of Edge that appellant was on the east or wrong side of the road when the collision happened. But it is a fact which may be said to be corroborative of controlling physical facts now to be detailed.

There is unanimity among auto mechanics called as experts as to the parts of the cars which came into contact. An examination of the wrecks showed the Essex (Edge's car in which plaintiff's decedent was riding) received the

impact "right on top of the right front frame just in back of the frame horn," which is "an anchorage for the front end of the front spring." The frame horn is riveted onto the frame. The blow was to the right of the radiator. The Chrysler (appellant's car) showed the point of impact to be on the right front frame. The right front wheel was pushed back into the frame which supports the rear of the motor. Mr. Eichman, who was called as an expert witness, testified that it was a forty-five degree damage; that pushing that front in forty-five degrees would bring the front end of the frame around as he found it; the damage to the Essex was on the right side and there was no damage to the Chrysler on the left. This absence of mars or damage on the left side of the Chrysler is important in a study of the way in which the two cars came to their position of rest and in determining whether or not the collision occurred as Edge suggests it might have. After the collision the Chrysler was standing crosswise on the west half of the road. Some witnesses placed it with its back wheels a little east of the black line in the center; a variation of a few inches here is of no great consequence; but when sheriff Finn arrived a few minutes after the crash and before the Chrysler had been moved, he made measurements, a map, and took particular note of the location of the cars, and he testified that the Chrysler "was across the highway. The front of the car was very close to the west edge of the concrete. The rear of the car, the spare tire on the car, was directly above the black line—the spare tire on the rear of the car."

It is established and undisputed that the Essex after the impact moved off the concrete and tipped or settled over on its right side. The Essex was raised, the occupants taken out, and the car was permitted to stand with its left side against a pole. The sheriff also noticed marks, as he testified, "about five or six feet west of the black line; there were

two scratches in the cement and those were the most prominent ones." He also noticed water and oil under the Chrysler.

With these facts established it is not enough to say the collision might have taken place on the east side of the road or that anything may happen in a collision. If the condition of the two cars and their location immediately after the accident show the accident happened on the west side of the highway and disprove human testimony supporting a different opinion or theory, then that testimony must be rejected, and the court in its decision must be guided by the undisputed laws of nature. This is in the interest of truth and justice. *Musbach v. Wis. Chair Co.* 108 Wis. 57, 84 N. W. 36. We are convinced that in the nature of things two cars could not collide under circumstances detailed by the witness Edge and produce the results which are conceded to have existed after this collision. For it is certain that had a collision under that description taken place, Edge not moving his car one way or the other, the points of contact which are conclusively established and must be accepted as true would have been different. If we assume that centrifugal force would have a tendency to pull the Chrysler car to the left and over the center of the road, and in an effort to avoid a collision, Edge, just before the accident, pulled his car to his left and the driver of the Chrysler steered to his right to get back on the west side of the road, before the Chrysler could have reached the position where it was found after the collision, there would necessarily have been contact between some left portion thereof and some marks upon its left side, for, in order to reach the respective locations, these cars must then have had some contact as they proceeded across the highway to where they were found by the sheriff and others and this contact would have been of the left side of the Chrysler with the right side of the Essex. Evidence as to the place

of the collision as given by Edge when contrasted with the evidence of the marks upon the pavement west of the center of the highway, the location of the cars following the collision, the freedom of the left side of appellant's car from evidence of damage, creates two positions so opposed in fact that there can be no compromise. For again, it would have been impossible to have the points of impact as they were if each driver had been negligently straddling the center line. One version or the other must be accepted; which one does the controlling and indisputable evidence support is the question. A statement in the opinion written by Mr. Justice DOERFLER in *Haggerty v. Rain,* 177 Wis. 374, 186 N. W. 1017, is quite in point:

"The position of the . . . car immediately after the accident, as testified to by numerous witnesses, the indentation made by the axle on the cement, and the mark left by the skidding . . . create a physical situation which is decisive not only as to the place of collision, but as to the physical impossibility of the accident having happened at the place designated by the defendant and his witnesses."

The crash, the impact, in the case at bar, to produce the result found and testified to by the sheriff and others must have occurred as appellant says it did, while the Essex car was moving across the path of the Chrysler in an angle approximating forty-five degrees. This and the momentum of the two cars completely account for the situation immediately following the collision. The two cars met at that angle, the Chrysler with its heavier frame weighing some seven hundred pounds more than the other car, receiving the force of the blow from the Essex on its right front which was pushed back as described. The Essex struck as detailed, some of the support between its body and the roadbed failing it, parts dropped and came in contact with the road surface. The marks on the pavement resulted from its

movement of a few feet before it fell on its right side just west of the concrete. The three people who were in the Essex were not released until it had been raised up so as to make access to the right side possible.

The conclusion thus arrived at makes it unnecessary to treat other questions raised by appellant. We deem it proper to say here, however, that an automobile in the management of one under the influence of intoxicants becomes a dangerous engine fraught with peril to the driver, to those riding with him, and to all users of the highway. The legislation calculated to prevent driving by those addicted to this habit is wholesome and if efficiently enforced may help to prevent such disasters as this one now before us, where a young wife and mother and a young man are dead, and three others escaping death suffered great injuries.

The failure of the evidence to show negligence on the part of the appellant requires a reversal.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

OWEN, J., took no part.

FRITZ, J., dissents.