NITKA (Richard), Appellant, vs. VAN CAMP and another, Respondents. [Case No. 77.]

NITKA (Rosella), Appellant, vs. SAME, Respondents: NITKA (Richard) and another, Defendants. [Case No. 78.]

*November 28—December 30, 1949.*

Case No. 77:

For the appellant there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *John F. O'Melia.*

For the respondents there was a brief by *Hanaway & Byrnes* of Green Bay, and oral argument by *Charles T. Hanaway.*

Case No. 78:

*Emmet W. Rohan* of Kaukauna, for the appellant.

For the respondents there was a brief by *Hanaway & Byrnes* of Green Bay, and oral argument by *Charles T. Hanaway.*

For the defendants Richard Nitka and United States Fidelity & Guaranty Company there was a brief by *Bendinger, Hayes & Kluwin* of Milwaukee, and oral argument by *John A. Kluwin.*

MARTIN, J. The issue in this case is whether there is any evidence sufficient to create a jury issue as to whether the defendant, Fabian Van Camp, was negligent in any respect in the operation of his automobile, and if there is evidence of such negligence, whether there is any causal connection between such negligence and the accident that occurred.

The points to be considered in reviewing a directed verdict were clearly set out in *Slam v. Lake Superior T. & T. R. Co.* (1913), 152 Wis. 426, 432, 433, 435, 140 N. W. 30:

"It is considered that these cases and perhaps others containing like language were all intended to express and do in fact express the same general idea, namely, that when the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong. It is also considered that this is an entirely reasonable and salutary principle; a principle upon which the court has acted in the past and expects to act in the future; a principle which gives due weight and dignity to the decision of the trial judge and demands of him his best and most conscientious service whenever such a question is presented. . . . In *Szczepanski v. C. & N. W. R. Co.* 147 Wis. 180, 132 N. W. 989, it was said concerning the decisions of the trial court on motions to direct a verdict and for judgment after verdict, 'they must be wrong and so clearly that way as to leave no reasonable controversy in respect thereto' in order to be reversed here. . . . When satisfied that such a decision is clearly wrong, we shall feel that it is our duty to so pronounce it; when not so satisfied, we shall feel that it is our duty to affirm it."

On December 25, 1947, at approximately 10 p. m., the plaintiff, Richard Nitka, was operating his automobile in a general northerly direction on United States Highway 41, between the cities of Kaukauna and Green Bay, Outagamie county, Wisconsin, and Rosella Nitka, his wife and also a plaintiff in this action, was riding with him. One Winifred Neumann was driving an automobile in a general southerly direction on said highway and immediately following the said Neumann automobile the defendant, Fabian Van Camp, was driving and operating his automobile upon said highway in a general southerly direction. The road was straight and level and clear of ice, snow, and water, although the shoulders had some icy spots on them.

Plaintiffs contend that Van Camp was too close to the Neumann car for safety and violated the provisions of sec. 85.15 (2), Stats., in attempting to pass the Neumann automobile; that while the Van Camp vehicle did in no way contact the Nitka car, that Van Camp did create a dangerous situation. Nitka turned right onto the east shoulder proceeding some distance before cutting directly westerly at right angles into the path of the Neumann car. The collision occurred in Neumann's lane or the west lane of traffic.

Richard Nitka testified: He was traveling thirty to thirty-five miles per hour; that Neumann's lights were visible for one-half mile; and that at some distance he observed a reflection of lights from some car behind the Neumann car. When he was one hundred twenty-five to one hundred fifty feet from the Neumann car, the car in back of the Neumann car swung out into his lane of travel. His wife screamed and he turned to his right on the shoulder and does not know what happened from there on.

Rosella Nitka testified: That she saw four lights approaching, screamed, and then does not remember what happened. She estimated the distance between the Nitka

and Neumann cars at the time she screamed was approximately one hundred twenty-five feet.

Fabian Van Camp testified: He was traveling at approximately forty miles per hour; that when he approached the Neumann automobile at a distance of two hundred feet, he swung to the left, partially invading the east or left lane of travel. Someone in the car said, "we have plenty of time" and, acting upon that, he returned to his proper lane of travel and made no further attempt to pass. At the time the Nitka car jackknifed in front of the Neumann car, he applied his brakes and stopped about twenty-five feet back of the Neumann car.

In a statement signed by Van Camp approximately a month after the accident, it is stated:

"I was following a car going south. I decided to pass this car, but after I got beside it I saw another car coming from the south. I decided to drop back behind the car I was passing. I feel I could have passed, but I didn't. As I got back in my own lane the car coming north swung sideways and was struck by the car I was passing. I stopped my car abruptly and proceeded to help the injured parties. My car did not hit any of the other automobiles. I drove back a half mile and called the authorities."

W. A. Neumann testified: He was proceeding in a southerly direction at about forty miles per hour and that he had noticed several cars coming from the south but had paid no attention to them. The first time he noticed the Nitka car was when it jackknifed in front of him. At no time within the last thousand feet before the accident had the lights of any automobile approaching from the rear shown in his windows or on his rear-view mirror nor had any automobile come up alongside of him to pass. Mrs. Neumann's testimony was to the same effect.

Mr. and Mrs. E. H. Draeger testified that their car followed the Neumann automobile at the time of the collision. Mr. Draeger testified that he saw the Nitka car

coming down the road in its own lane of traffic with its headlights on and there was nothing unusual about its operation; that just before the impact the Nitka car turned in front of the Neumann car as though they were turning into a side road although there was no road there. He further testified that there was a tire track about one foot east of the east edge of the concrete running parallel to the concrete about sixty feet to the point where the car jackknifed and the collision occurred.

To consider the question of whether or not the operation of Van Camp's vehicle was a negligent operation, it is necessary to disregard the testimony of the Draegers that they were the car following the Neumann automobile. Plaintiffs' complaints allege that following the Neumann automobile was an automobile operated by the defendant, Fabian Van Camp.

Considering the testimony most favorable to the plaintiffs, that when they were approximately one hundred twenty-five feet from the Neumann automobile the Van Camp car which was "close" behind the Neumann car suddenly turned into their lane of traffic and created an emergency, neither the testimony nor the physical facts support this conclusion.

Van Camp made an observation to see if he could safely pass. The Neumanns were traveling forty miles per hour and, in order to pass, it was necessary for Van Camp to accelerate his speed some. The Nitkas were traveling between thirty and thirty-five miles per hour. The evidence shows that Van Camp dropped back into his lane of travel and stopped his car twenty-five feet behind the Neumann car after the impact. There is no evidence of any skid marks by the Van Camp automobile. These physical facts show that the Van Camp car was at least three hundred to three hundred fifty feet from the Nitka car when the observation was made.

Where human testimony is in contradiction to physical facts and common knowledge, it will not support a verdict. *Samulski v. Menasha Paper Co.* (1911), 147 Wis. 285, 133 N. W. 142; *Holborn v. Coombs* (1932), 209 Wis. 556, 245 N. W. 673.

There is no credible evidence of any negligence on the part of the defendant, Fabian Van Camp. There is no testimony in the record from which any inference can be drawn that would result in a reasonable conclusion as to what caused the accident. The trial court properly directed a verdict in favor of the defendants.

Richard Nitka and the United States Fidelity & Guaranty Company obtained from plaintiff, Rosella Nitka, a release under ch. 113, Stats., on June 16, 1948, and we do not have that before us here.

*By the Court.*—Judgments affirmed.