WEAR, Appellant, vs. NORTHERN STATES POWER COMPANY, Respondent.

*May 6—June 3, 1952.*

*Donald L. Farr* of Eau Claire, for the appellant.

For the respondent there was a brief by *Ramsdell, King & Carroll* of Eau Claire, and oral argument by *George M. Carroll* and *Bailey E. Ramsdell*.

BROWN, J. Fred Wear was employed by the Home Insulation Company. On the day in question he and several other employees were engaged in removing a tree which obstructed the driveway of the garage of the company's manager. It was necessary to cut limbs off the tree before taking the tree down. Wear had brought a magnesium ladder to use in the operation and the other employees had placed this against the trunk of the tree for cutting the north limbs. Defendant's electric-transmission line, carrying twenty-three hundred volts, passed south of the tree, about three to three and one-half feet from the trunk and twenty-three feet above the ground. When Wear finished cutting limbs on the north side of the tree some of his fellow workers moved the ladder to the east side of the tree, where it would be safe, as one of them testified. Wear then moved the ladder further south to where it was not more than eighteen inches from the wire. One of the workmen, Zell, testified that Wear saw the wires and Zell told him to be careful. Zell offered to trim the tree and Wear said he would trim it himself; he did not want anyone to get hurt. Woodford, a coworker, heard Zell warn Wear about going near the wires and heard Wear say he would be careful. Radle, another workman, testified that he and Zell cautioned Wear about moving the ladder to where Wear placed it and Wear said he would be all right. They both warned him again as he went up. These were plaintiff's own witnesses and there was no version of the accident other than theirs.

After the ladder was placed Wear went up and lashed the top of the ladder to the tree. Then he asked for a saw and Zell started up with it but, before reaching Wear, Zell saw smoke coming from Wear's body. Soon after Wear fell from the ladder. The other workmen also saw Wear apparently on fire. No one saw him come in contact with the wire but one witness testified that Wear had hold of the wire with his hand.

Defendant's wires were not insulated, though they were covered with a weatherproofing substance that was designed to prevent leakage of current, not to protect human beings. Near the ladder the wire had been spliced and the splice wrapped with tape which was badly weathered, and the bare wire was exposed for about two inches. There is no testimony that Wear came in contact with the bare spot but he could have done so. Plaintiff submits that defendant should have insulated these wires, or guarded them so that people would not come in contact with them, or have warning signs. The jury found that defendant was negligent as to the condition in which it maintained its electric-power line without specifying particulars.

In deciding the motions after verdict the learned trial court stated:

"Under the evidence presented, it is most difficult to find any negligence on the part of the defendant as to the condition in which it maintained its electric-power line or that there was reasonable ground to anticipate that people would come in dangerous proximity thereto. No violation of a specific safety order is cited, and the question becomes one of negligence as to effectively guarding and isolating the wire from accidental contact by persons such as the deceased. Even though this phase of the matter be regarded as a question of fact and that the finding of negligence by the jury should therefore stand, the negligence of the deceased, then forty-three years old, in going into a place of known danger over the objection of fellow employees, must be held to be at least as great as any negligence of the defendant."

In this statement we must concur. Mr. Wear's companions placed the ladder where they considered it safe. Over their protests he moved it closer to defendant's wires. They warned him repeatedly of the risk of the wires and one offered to do the job in his place. Mr. Wear rejected the offer because he did not want the volunteer to get hurt. He seems to have been fully aware that he was undertaking a dangerous job in a dangerous way,—at least he was so in-

formed. We have much the same situation that was present in *Menden v. Wisconsin Electric Power Co.* (1942), 240 Wis. 87, 2 N. W. (2d) 856, where the deceased, in disregard of warnings and in the belief that he could take care of himself, put himself into a place of known danger.

Defendant's wire presented no risk to the general public. It was not in a place generally accessible or frequented. Wear was able to reach it only after procuring a ladder and climbing more than twenty feet to it.

In *Slam v. Lake Superior T. & T. R. Co.* (1913), 152 Wis. 426, 432, 433, 435, 140 N. W. 30, we stated the principles governing the review of a trial court's ruling on a motion to set aside a verdict. We cited the case and repeated the language in *Nitka v. Van Camp* (1949), 256 Wis. 119, 121, 40 N. W. (2d) 570, and we do so here:

" '. . . when the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong. It is also considered that this is an entirely reasonable and salutary principle; a principle upon which the court has acted in the past and expects to act in the future; a principle which gives due weight and dignity to the decision of the trial judge and demands of him his best and most conscientious service whenever such a question is presented. . . . In *Szczepanski v. C. & N. W. R. Co.* 147 Wis. 180, 132 N. W. 989, it was said concerning the decisions of the trial court on motions to direct a verdict and for judgment after verdict, "they must be wrong and so clearly that way as to leave no reasonable controversy in respect thereto" in order to be reversed here. . . . When satisfied that such a decision is clearly wrong, we shall feel that it is our duty to so pro-

**14**

nounce it; when not so satisfied, we shall feel that it is our duty to affirm it.' "

In our view the record in this action and the principles just quoted from *Slam v. Lake Superior T. & T. R. Co.* and *Nitka v. Van Camp, supra,* require judgment to be affirmed.

*By the Court.*—Judgment affirmed.