SCRAFIELD, Appellant, vs. RUDY, Respondent.

*April 5—May 4, 1954.*

For the appellant there were briefs by *Fisher & Fisher* of Janesville, and oral argument by *Cleland P. Fisher*.

For the respondent there was a brief by *Cavanagh, Mittelstaed, Sheldon & Heide* of Kenosha, and oral argument by *William A. Sheldon*.

BROWN, J.  Scrafield, seventy-five years old, and shown by the record to be erratic and excitable, was employed to care for lawns and shrubbery.  After working for defendant Rudy for three days, Rudy discharged him.  Scrafield testified that when Rudy paid him off Rudy became angry and struck Scrafield many blows about the head and body.  Rudy denied all violence on his part and testified that Scrafield struck him and then seized Rudy's clothing and pulled Rudy down on top of him.  There were practically no points of agreement in the two versions and result of the trial depended on the weight which the jury might give to Scrafield's testimony.

We consider that prejudicial error was committed when, over plaintiff's objection that the evidence was immaterial and was hearsay, the trial court permitted Mr. Rudy to testify that while he was in the house, Mrs. Rudy came to him and said:

" 'Fritz [Mr. Rudy], will you go out and tell that man I don't want him any more?' She said, 'I am afraid to.  After what he done to me the other day I am afraid.' . . .

"*Q*. Did she tell you at that time what he had done the other day?  *A*. Yes.

"*Q.* What did she tell you? What did she say? *A.* About what?

"*Q.* About what he had done the other day. *A.* Oh, about the lawn. That he was rolling the lawn and she went out and told him that it would be better if it would be raked before the twigs were rolled into the lawn, and that he got terribly mad at her and threatened—as much as threatened her by putting his finger under her nose and telling her to mind her own business, that he knew what he was doing, in a very boisterous voice, to the point where she got scared of him."

The court admitted the testimony as part of the *res gestae.* We do not think this ruling can be sustained. To be admissible as part of the *res gestae* the statement must be deemed the spontaneous utterance of the speaker, springing out of the transaction itself, and hence the product of the speaker's mind, prompted by the event and not the result of deliberation after the event. *Cohodes v. Menominee & Marinette L. & T. Co.* (1912), 149 Wis. 308, 135 N. W. 879. It must be a natural, unpremeditated statement growing out of the main fact; a spontaneous utterance of thought dominated or evoked by the transaction itself. 32 C. J. S., Evidence, p. 21, sec. 403. The main fact, transaction, or event in this case is the assault by one man upon the other. It had not occurred when Mrs. Rudy had the conversation with her husband and could not be evoked or dominated by that event. It was a mere narration of an event which occurred the day before, admitted in evidence in spite of the rule against hearsay testimony. On the ground of materiality it is not available to the defendant to explain an assault which he denies making, and it could not influence Scrafield's conduct for he was not present when the complaint was made. The only effect of the statement was to antagonize and prejudice the jury against the plaintiff by an injurious

hearsay report of his conduct on another occasion and we consider that the admission of this evidence constitutes reversible error requiring a new trial.

Counsel for defendant asked plaintiff a number of questions which were clearly irrelevant and which tended to degrade him. An example is: "Did you ever sleep in unfinished houses in Kenosha with a woman not your wife?" Several of such questions,—not all,—were objected to and the objections were promptly sustained. Whether objection is made or not, such irrelevancies insinuating that the witness is a person of bad character, tending to degrade him and thus prejudice him in the eyes of the jury, are disapproved as methods permissible to impeach his credibility, and on occasion may be the cause of a reversal. *Corti v. Cooney* (1926), 191 Wis. 464, 211 N. W. 274. We do not reverse now for this reason but we recommend greater caution in pursuing such topics in the new trial now ordered.

*By the Court.*—Judgment reversed and cause remanded with directions to the trial court to set aside the verdict and grant a new trial.