SPARISH, Appellant, vs. ZAPPA and another, Respondents.

*May 1—June 5, 1956.*

196

For the appellant there were briefs and oral argument by *Daniel I. D'Amico* of Cumberland.

For the respondents there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar, Jr.*

FAIRCHILD, C. J. The appellant states two causes of action: (1) Violation of the safe-place statute; (2) common-law negligence. The court determined that respondents were partners in a commercial enterprise; and that at the time of the accident they were carrying on a commercial business, and their relation to the appellant was one of employers and employee. At the trial, evidence was admitted as to relevant safety orders promulgated by the industrial commission under the safe-place statute. The trial court ruled, in effect, that under *Haefner v. Batz Seed Farms, Inc.,* 255 Wis. 438, 39 N. W. (2d) 386, such evidence could not have been submitted in an action involving common-law negligence, and submitted the case on the safe-place theory.

The safe-place statute, sec. 101.06, Stats., reads:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

The safety orders of the industrial commission involved in the instant case are, in part:

Order No. 24 (c). "Machine parts having a reciprocating or oscillating motion such that a shearing or crushing hazard is created, shall be guarded."

Order No. 32. "The blades of every fan when exposed to contact, shall be guarded in accordance with Order No. 2 (b)."

Order No. 2 (b) provides standards and specifications for guards.

Order No. 6 (b). "Machines on which two or more persons work shall be equipped with one or more controls so located that more than one of these persons can quickly disconnect the machine from the source of power."

In the special verdict the jury found that:

(1) At and immediately preceding the accident there was no failure on the part of respondents to maintain the place of employment as free from danger as the nature of the place of employment would reasonably permit with respect to (a) keeping the chains on the floor of the wagon repaired; (b) with respect to providing guards on the silo blower.

(2) At and immediately preceding the accident the respondents did fail to maintain the place of employment as free from danger to the safety of their employee as the nature of the place of employment would reasonably permit with respect to providing one or more controls of the source of power of the silo blower and equipment; and that such failure was causal.

(3) That at and immediately prior to the accident appellant was negligent with respect to the manner and the place where he stepped off the back of the wagon onto the edge of the trough in order to disengage the dog on the ratchet; and that such negligence was causal.

Negligence was attributed 30 per cent to respondents and 70 per cent to appellant. Damages were assessed at $3,000.

There is no serious contention by appellant that respondents were negligent in keeping the chains on the floor of the wagon repaired. The condition of the chains did not violate

any safety order. In this type of operation, chains, dragged across the floor and over a roller, were constantly being worn and would break in the process of a silo-filling job. It was customary to repair them as they broke. The breaking down and necessity of repairing the chains was too remote to be considered a proximate cause of the accident here.

The accident occurred because appellant pursued an unsafe course in connection with the place of employment. The place of employment here was the blower and equipment. There was a ratchet mechanism on the blower which included two wheels with teeth. A dog at the top of the wheel turned it, while another dog near the bottom held it back. There was also an arm with an eight-inch universal joint on each end, which, when extended parallel with the ground and connected to the roller at the back of the wagon floor, turned the roller as the ratchet wheel turned. The roller pulled the chains fastened to a false endgate. As the endgate moved, it pushed the silage toward the rear of the wagon, where it could be guided into the trough by two men with their pitch forks. They stood opposite the wagon side of the trough. The lever to the ratchet mechanism was also opposite the wagon side of the trough. It was the duty of respondent Donatelle to control that lever.

When the left chain broke, appellant and Donatelle got onto the wagon and forked silage off until they found the broken link. In order to repair it, it became necessary for them to release the tension on the chain by disengaging the ratchet and disconnecting the arm from the roller. This procedure required two men, one to release the dog which held the wheel back, and one to operate the lever to put the ratchet in gear. Respondent Donatelle jumped off the wagon, over the splashboard and trough, and went to the lever. He turned off the auger. Then he asked appellant to help him by releasing the bottom dog. In attempting to do so, appellant took hold of the side of the wagon at the left rear end.

"From there I stepped down on the edge of the trough, put my left foot—then I was going to take my right foot and step over the arm to the ground so I could release the ratchet but as I put my foot—my weight on my left foot, I believe my foot slipped; it got into the blower."

Appellant could safely have stepped off the wagon at the right rear end, at the free end of the trough, and gone around the trough to reach the ratchet wheel. Or he could have gone directly over the trough by stepping on the splashboard which then covered the auger. The auger had been turned off, and appellant would have encountered no danger in following such a course. Instead, he tried to get to the ratchet wheel by stepping on the edge of the trough at a point close to the blower. His testimony on cross-examination was: "I could have walked around the belt side of the wagon and taken the same route in getting from the ratchet mechanism to the back end of the wagon. . . . I knew that I could have stepped down on the ground on back of the trough, and come around that way."

In view of this testimony we are of the opinion that appellant's negligence constituted at least 50 per cent of the total aggregate negligence of the appellant and respondents, assuming that respondents were negligent in all respects contended for by appellant as well as that found by the jury. Because of our conclusion, it becomes unnecessary to pass on any of the assignments of alleged error which might otherwise entitle the appellant to a new trial.

*By the Court.*—Judgment affirmed.