Rudzinski and another, Appellants, v. Warner Theatres, Inc., Respondent.

*March 5—April 3, 1962.*

For the appellants there was a brief by *Phillips, Phillips, Hoffman & Lay* of Milwaukee, and oral argument by *N. Paley Phillips*.

For the respondent there was a brief by *Foley, Sammond & Lardner* and *John R. Collins,* all of Milwaukee, and oral argument by *Mr. Collins.*

CURRIE, J.   A verdict should only be directed against a plaintiff where plaintiff's evidence, giving it the most-favorable construction it will reasonably bear, is insufficient to sustain a verdict in plaintiff's favor. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 484, 107 N. W. (2d) 458; *Western Casualty & Surety Co. v. Dairyland Mut. Ins. Co.* (1956), 273 Wis. 349, 351, 77 N. W. (2d) 599. Therefore, we deem it only necessary to set forth the evidence favorable to plaintiffs.

Defendant's theater is located on the north side of Wisconsin avenue, the main business street in the city of Milwaukee. It has three lobbies. The outer lobby is open to the street and might more properly be designated a vestibule. Five pairs of double doors open from this vestibule into the middle or center lobby which has a terrazzo floor. Another bank of five pairs of double doors leads therefrom into the inner lobby, which is carpeted.

The accident occurred at about 11:30 p. m. on October 10, 1957, as Mrs. Rudzinski was in the act of leaving the theater at the conclusion of the last run of the movie. That day the Milwaukee Braves had won the world series and there were very few people in attendance at this theater, although there were crowds in the streets celebrating the Braves' victory. In attempting to leave the theater, Mrs. Rudzinski entered the middle lobby and tried to exit through the west pair of doors leading to the vestibule, but found these doors locked. An usher, seated on a stool near the center pair of outer doors, said to her, "Center door, please." Mrs. Rudzinski then turned, walked a few steps toward the center pair of doors, and fell.

Upon examination at the trial, she was asked if she knew what caused her fall. She responded: "Well, there were slippery and wet spots all around, scattered." She also testified that after the fall she found sticky, dirty spots on her coat and stockings, which she identified as "beer spots" because of the odor. While she had not observed any wet spots on the terrazzo floor before the fall, afterward she saw several spots in the vicinity. She estimated that these spots had circumferences of about 18 inches each. Plaintiffs' theory is that these wet spots came from beer thrown or spilled by people celebrating the Braves' world series triumph. However, there is no evidence that this occurred. The evidence adduced by the defendant is all to the effect that there were no wet spots on the center lobby floor at the time Mrs. Rudzinski fell.

From the foregoing evidence, a jury could find that there were wet spots on the terrazzo floor at the place where Mrs. Rudzinski fell. Furthermore, the jury could reasonably infer that one of these spots caused her to slip and fall. However, this does not afford a sufficient basis to permit recovery by plaintiffs in the absence of actual or constructive notice to defendant of the existence of these spots prior to the accident. The memorandum opinion of the learned trial court makes it clear that the verdict was directed against plaintiffs on the ground that there was no evidence which would sustain a finding of actual or constructive notice.

On this appeal plaintiffs advance these two contentions:

(1) The court excluded evidence of a postaccident conversation, between an usher and a janitor, which constituted an admission of actual notice on the part of the usher which would be binding upon defendant; and

(2) There was sufficient evidence adduced by plaintiffs upon which a jury could base a finding of constructive notice.

## Admission of Employee.

Mrs. Rudzinski testified that she was rendered semiconscious and dazed by the fall and that afterward two men, presumably ushers, picked her up, placed her on a stool, and brushed off her clothes. Upon the request of the usher, Kuntz, one of the girl employees brought Mrs. Rudzinski a glass of water. Kuntz then asked her if she wanted to go to a hospital and she replied in the negative. He then advised her to see her doctor the next day and gave her a slip containing Kuntz's name and defendant's telephone number. Kuntz requested that she phone him and then see the doctor. Mrs. Rudzinski then noticed a janitor mopping up the floor.

Plaintiffs' counsel sought to question her about a statement Kuntz allegedly made to this janitor, but the court sustained an objection thereto. An offer of proof as to this statement was then made in the form of questions put to Mrs. Rudzinski and her answers thereto. In this offer of proof, she testified that Kuntz stated to the janitor: "Now you come when it's too late, after someone falls. Why didn't you come a half hour ago when I called you?" and that the janitor made no response. If this excluded testimony had been admitted it would have given rise to the inference that Kuntz had actual notice of the wet spots on the center lobby floor approximately one-half hour before the accident. Kuntz later denied having had any conversation with a janitor.

Plaintiffs maintain that the excluded statement was admissible both as an admission of an agent, binding his principal, the defendant, and because it constituted part of the *res gestae*.

In order for an agent's statement to be admissible against his principal, it must have been spoken within the scope of the authority of the agent to speak for the principal. 2 Jones, Evidence (5th ed.), p. 669, sec. 355; McCormick, Evidence

(hornbook series), p. 518, sec. 244; Restatement, 2 Agency (2d), p. 6, sec. 286. This principle was applied in an opinion by Mr. Justice WICKHEM, *Hamilton v. Reinemann* (1940), 233 Wis. 572, 577, 290 N. W. 194, and seven earlier Wisconsin decisions were cited in support thereof. Professor Edmund M. Morgan, in 2 Basic Problems of Evidence, p. 236, states: "It is necessary to distinguish sharply between authority to do an act or to deal with a specified matter and authority to talk about it. The latter is usually a requisite of admissibility of statements made by the agent."

The authority to speak for the principal may, of course, be implied, and usually the implications of the relationship furnish the basis for the authority. 2 Jones, Evidence (5th ed.), p. 669, sec. 355, footnote 17, and cases cited therein. However, in the instant case no foundation of agency was laid from which such an implication could be drawn. Also, the evidence is undisputed that it was not part of the duties of Kuntz to direct the work of the janitors in the theater. Therefore, there was neither express nor implied authority on his part to speak for defendant in the matter.

There is a further compelling reason why the excluded statement is not admissible as an admission binding the defendant. This is because it was a statement made by one employee to a fellow employee. Restatement, 2 Agency (2d), p. 9, sec. 287, lays down the rule that statements made by an agent to his principal, or to another agent of the principal, are not admissible as admissions. The comment accompanying this section states that:

"Statements of agents which the principal has authorized to be made to third persons are admissible against him under the same circumstances as those made by himself, since if the principal is willing to give them to the world it is not unfair that they should be subsequently used against him. On the other hand, statements made by the agent to the principal or to other agents are statements which the principal does not intend to be given to the world or to be

considered as his statements. He does not in any way vouch for their truth. The historical fiction of the identity of principal and agent is not operative in transactions between them." Ibid., comment *a*.

We turn now to the question of whether the alleged statement was admissible as part of the *res gestae*. While this state has not adopted the American Law Institute Model Code of Evidence, we deem that Rule 512 thereof states the law of Wisconsin with respect to statements admissible under the concept of *res gestae*. Rule 512 states (p. 262):

"Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made (a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or (b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains."

In a 1951 decision, this court stated the Wisconsin rule in similar terms: "It is generally held that to be part of the *res gestae* the declaration must be contemporaneous with the act or transaction. In some cases spontaneity of the declaration is considered a substitute for the time element." *Krasno v. Brace* (1951), 259 Wis. 12, 15, 47 N. W. (2d) 314.

In stating that spontaneity of the declaration may be a substitute for the time element, this court undoubtedly was referring to a situation where the witnessing of a startling event had caused such shock to the witness that his statement shortly after the event was spontaneous and not the result of reflection or contrivance. Cf. *Scrafield v. Rudy* (1954), 266 Wis. 530, 532, 64 N. W. (2d) 189. Wigmore expresses the view that the probability of trustworthiness of the statement rests in the fact that "in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of

one's actual impressions and belief." 6 Wigmore, Evidence (3d ed.), p. 139, sec. 1749.

This court has confined the rule of *res gestae* to statements concerning the event being contemporaneously described or statements which were the spontaneous result of such event. *Kamp v. Coxe Bros. & Co.* (1904), 122 Wis. 206, 212, 99 N. W. 366. Wigmore states the rule as follows (6 Wigmore, Evidence (3d ed.), p. 155, sec. 1750) :

> "The utterance must *relate to the circumstances of the occurrence preceding it.* This is perhaps a cautionary rather than a logically necessary restriction. If, for example, after an assault, the injured person exclaims that in the previous week the attacking party had tried to shoot him, there is perhaps no less reason for trusting that part of his utterance than any other part. Nevertheless, it is possible to argue that such utterances imply to some extent a process of reflection or deliberate reasoning; and practically there is not the same necessity for employing them. It seems clear, on the precedents, that utterances thus relating to some distinct prior circumstance would not be received."

Kuntz's alleged statement did not relate to the startling event, which plaintiffs contend provided the spontaneity for the statement, but to another event which had occurred one-half hour before. Thus, it was not admissible under the rule of *res gestae.*

It should also be noted that where a hearsay statement, claimed to be the spontaneous result of a startling event witnessed by the declarant, is sought to be admitted as part of the *res gestae,* the trial court is clothed with wide discretion in ruling on admissibility. *State v. Dunn* (1960), 10 Wis. (2d) 447, 457, 103 N. W. (2d) 36; *Kressin v. Chicago & N. W. R. Co.* (1928), 194 Wis. 480, 486, 215 N. W. 908; *Johnson v. State* (1906), 129 Wis. 146, 152, 108 N. W. 55. In the instant case, Kuntz was not a participant in the accident and the trial court could have concluded that, at the time he allegedly made the statement to

the janitor, he was no longer under any emotional stress from the accident, if he ever had been.

### Constructive Notice.

By upholding the exclusion of the alleged statement to the janitor there is no evidence remaining which would sustain a finding of actual notice to defendant of the claimed defective condition of the floor where plaintiff fell. However, there remains the issue of whether there is evidence upon which a finding of constructive notice might be grounded.

The trial court's memorandum opinion stressed the fact that the record is totally devoid of any evidence as to the length of time the wet spots were on the floor, if, in fact, such condition did exist. It was that court's conclusion that a jury should not be permitted to speculate with respect to how long such condition may have existed. However, the trial court overlooked one important piece of evidence bearing on the issue of constructive notice. This is Mrs. Rudzinski's testimony that the usher, who directed her to use the center pair of doors in making her egress from the theater, was seated on a stool but six feet away from the place where she fell. Under this evidence it would be immaterial how long the wet spots had existed on the floor. This is because they were in plain view of this usher and the jury would be warranted in concluding that he should have seen them. This would afford sufficient basis for a finding of constructive notice, and, therefore, the trial court should have withheld its decision to direct a verdict and permitted the matter to go to the jury.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

GORDON, J. (*concurring*). I believe that the excluded testimony should have been received into evidence as an admission against interest. Mrs. Rudzinski proposed to testi-

fy that she heard the usher make the following statement to the janitor: "Now you come when it's too late, after some-one falls. Why didn't you come a half hour ago when I called you?" In my opinion, this was an admission against interest made by an agent on a topic which was within the scope of his duties.

If the statement had been made by the principal himself, it would have met the classic requirements of an admission against interest and would have been treated as an exception to the hearsay rule. Because the defendant corporation can act and speak only through its agents, it should bear the burden of an admission which relates to its agent's duties. In a decision being filed at the same time as that in the instant case, we hold that a corporation, pursuant to a stat-ute, may be found criminally liable for the unauthorized acts of its agents. *State v. Dried Milk Products Co-op.,* post, pp. 357, 361, 114 N. W. (2d) 412. Said the court:

"But a corporation acts of necessity through its agents whose acts within the scope of the agent's authority are the acts of the corporation, both for the imposition of civil and criminal liability. *Vulcan Last Co. v. State* (1928), 194 Wis. 636, 217 N. W. 412."

Thus, an employer may be criminally liable for the un-authorized acts of its agents; it would seem easier to bind the employer with civil responsibility for the unauthorized state-ments of its agents under the doctrine of *respondeat superior.*

We exclude hearsay as evidence because we doubt its in-herent trustworthiness, but we make an exception when such hearsay is in the nature of an admission against interest. The raison d'etre for this exception to the hearsay rule is that trustworthiness surrounds admissions against interest. The same considerations which give credibility to the state-ment against interest on the part of a principal should apply to his employee. Loyalty to an employer's interests is the rule, rather than the exception.

The test of admissibility should not rest on whether the principal gave the agent authority to make declarations. No sensible employer would authorize his employee to make damaging statements. The right to speak on a given topic must arise out of the nature of the employee's duties. The errand boy should not be able to bind the corporation with a statement about the issuance of treasury stock, but a truck driver should be able to bind his employer with an admission regarding his careless driving. Similarly, an usher should be able to commit his employer with an observation about a slippery spot on the lobby floor.

It is enough to show the existence of the employment and the general nature of the employee's work. There may be cases where a further foundation will be needed to develop that the utterances are fairly within the employee's scope of authority. Surely there can be little doubt that a theater usher's range of discussion properly includes the cleanup of a wet lobby floor.

The majority opinion points out that it was not part of the usher's duties "to direct the work of the janitors." The nature of the usher's responsibilities would have been relevant in determining whether the admission was made within the scope of his duties; however, it is noted that in the instant case, the evidence concerning the usher's duties was advanced long *after* the trial court had rejected the plaintiff's proposed testimony. Obviously, it did not play a part in the trial judge's ruling on this question.

Even if the testimony limiting the usher's duties had been received beforehand, it would not of itself be decisive of the admissibility of the admissions against interest. The scope of an agent's actions is not controlled by the exact terms of his employment contract. Is it realistic that any contract of employment between the theater and the usher would provide that the usher could or could not direct the work of the janitors? Furthermore, it is immaterial whether or not the

usher could call upon the janitor, because the statement contains an admission of knowledge of an unsafe condition in the theater lobby and should have been received to reflect that knowledge.

That this usher was entitled to heed the state of the lobby floor is inherent in the majority's opinion; they have reversed because the wet spots were "in plain view of this usher and the jury would be warranted in concluding that he should have seen them." In other words, the jury could infer the corporation's knowledge from the mere presence of the usher, but the jury must be denied those oral statements of the usher which would prove the knowledge.

I am mindful of the Restatement's view as set forth in 2 Agency (2d), pp. 6, 9, secs. 286, 287:

"286. In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter.

"287. Statements by an agent to the principal or to another agent of the principal are not admissible against the principal as admissions; such statements may be admissible in evidence under other rules of evidence."

I would reject the Restatement's position as forthrightly as the author of the foregoing majority opinion did in *Haumschild v. Continental Casualty Co.* (1959), 7 Wis. (2d) 130, 95 N. W. (2d) 814. I recognize that there are expressions in previous decisions of this court which support the majority's position. *Hamilton v. Reinemann* (1940), 233 Wis. 572, 290 N. W. 194. I respectfully submit that they should be overruled with the same motivation for improvement of the law which we expressed in *Bielski v. Schulze,* ante, p. 1, 114 N. W. (2d) 105; *McConville v.*

*State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14; and *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131, modified, 12 Wis. (2d) 373, 107 N. W. (2d) 292.

The Restatement's rule excluding admissions made by an agent to a fellow agent is especially confounding. These admissions are said to be barred because they are statements which "the principal does not intend to be given to the world or to be considered as his statements." In my opinion, the test is one of trustworthiness, and it is even less likely that an agent would misrepresent his employer's interests to a fellow agent than he would to an outsider. If the declaration be an admission against interest it should be received when asserted to a stranger, and, *a fortiori,* when asserted to a coemployee in the presence of a stranger.

In 2 Fletcher, Cyc. Corp. (perm. ed.), p. 1049, sec. 747, the author states:

" 'The declarations and admissions of subordinate corporate agents are binding upon a corporation only when made in connection with the particular business intrusted to them and such declarations must be incidental to the duties which they are intrusted to perform.' 'Were the rule otherwise, the fortune of every man would rest on the veracity of his errand boy.' "

In 4 Wigmore, Evidence (3d ed.), p. 119, sec. 1078, the author asserts the rule to be as follows:

"He who sets another person to do an act in his stead as *agent* is chargeable in substantive law by such acts as are done under that authority; so too, properly enough, admissions made by the agent in the course of exercising that authority have the same testimonial value to discredit the party's present claim as if stated by the party himself.

"The question therefore turns upon the scope of the authority."

Professor Wigmore is quite caustic about the judicial exclusion of an agent's admissions. For example, he discusses *Rankin v. Brockton Public Market* (1926), 257 Mass. 6, 153 N. E. 97, in which a customer in a store was hit on the head; the court excluded the saleslady's admission that it was she who had tossed the item of store equipment which had struck the plaintiff because the saleslady "had no authority to bind the defendant." At page 121, Professor Wigmore commented as follows:

". . . yet she had authority to sell goods and make a profit for defendant; then why not an authority to say how she sold them? Such quibbles bring the law justly into contempt with laymen."

Rule 63 (9) of the Uniform Rules of Evidence would likewise appear to contemplate the receipt of admissions by an agent:

"As against a party, a statement would be admissible if made by the declarant at the hearing if (a) the statement concerned a matter within the scope of an agency or employment of the declarant for the party and was made before the termination of such relationship . . . or (c) one of the issues between the party and the proponent of the evidence of the statement is a legal liability of the declarant and the statement tends to establish that liability."

The text writer who has most precisely pinpointed the problem is Professor Charles T. McCormick. In his hornbook treatise on Evidence, p. 519, sec. 244, the author states:

"The evidence should be tested by its trustworthiness. . . . The agent is well informed about acts in the course of the business, his statements offered against the employer are normally against the employer's interest, and while the employment continues, the employee is not likely to make such statements unless they are true. Accordingly, the commentators have advocated a widening of the common-law tests, such as is embodied in the Model Code provision which

lets in the agent's statement, if 'the declaration concerned a matter within the scope' of the declarant's employment, 'and was made before the termination of the agency or employment.' Some of the recent cases, in result if not in theory, support this wider test. Its acceptance by courts generally seems expedient."

Numerous courts have examined this question and have admitted the vicarious declarations. In *Slifka v. Johnson* (2d Cir. 1947), 161 Fed. (2d) 467, 469, Judge AUGUSTUS N. HAND said:

"It would be strange to have a rule of agency binding a principal to unauthorized acts of an agent, when done within the apparent scope of his authority, and yet to adopt a rule of evidence which would exclude statements naturally made in the course of the agency. Such a rigid view does not accord with the current broadening of the rules of evidence or with the spirit of contemporary remedial statutes."

In *Myrick v. Lloyd* (1946), 158 Fla. 47, 27 So. (2d) 615, 616, the defendant's agent, while driving the defendant's car, struck a boy. As the agent was going to the hospital with the parents of the injured boy, he told them that the accident was his fault and not the fault of their son. The court held the statement of the agent admissible because it was made within the scope of his authority. After quoting Wigmore, the court said, at page 49:

"We recognize a conflict of authority on this question; however we have chosen the above as the more practical and liberal rule. . . . the statement had reference to matters occurring within the scope of his employment. When so acting the agent was acting for the principal who might have made such an admission himself against his own interest."

In *Arenson v. Skouras Theatres Corp.* (1944), 131 N. J. L. 303, 36 Atl. (2d) 761, the plaintiff sued to recover for injuries incurred when he sat on a theater seat that was wet with a liquid containing a chemical that burned him.

Testimony was offered at the trial with respect to admissions concerning the substance on the seat made by an usherette to the manager in the presence of the plaintiff. In holding that the testimony was admissible under the admissions exception to the hearsay rule, the court stated (p. 306) :

"Were the statements in question made by the agents of the defendant in the execution of their agency? There seems no room for doubt that they were so made. The manager was clearly charged with the duty of operation and to see that acts of employees were not negligent. It is clear that the manager was conducting a transaction for the principal, an inquiry into an immediate occurrence that was in the execution of his duty, and that the answers of the girl to such queries of the manager form part of the act—the inquiry—which was being conducted for the benefit of the principal by its agent. The answers of the girl were as much part of the act as if the principal had propounded the same inquiry to the manager. Here each was an agent of the principal for certain duties and each was acting within the scope of the agency in asking and answering questions."

In *Whitaker v. Keogh* (1944), 144 Neb. 790, 795, 14 N. W. (2d) 596, 600, the plaintiff offered to show that after the collision the defendant's driver said, "Lady, I am sorry. I just saw you the instant I collided with you." The court ruled that this was "not a question of *res gestae*" and went on to hold that "the evidence was properly receivable as an admission against interest."

In *Robinson v. Fort Dodge Limestone Co.* (Iowa 1960), 106 N. W. (2d) 579, 584, the agent, one Underberg, testified that some frozen chunks had fallen off a pile and caused the injury. Over objection that the statement was inadmissible because the agent had no authority to make it, the court ruled that:

"Knowledge on the part of Underberg is knowledge of defendant. The statement of Underberg was admissible to

show his knowledge of the condition of the limestone at or before the time of the injury."

The testimony received in each of the above cases would have to be rejected if the Restatement rule were applied. I consider the Restatement rule especially unsound in that it would bind a principal with the statements of his employee to third persons only in the unrealistic situation in which the agent was authorized to make statements.

In conclusion, I would exclude the admissions of an agent when:

(a) He purports to speak on a subject beyond the scope of his duties or personal knowledge, or

(b) He is shown to have an animus against his principal which negatives the trustworthiness of his declaration, or

(c) His admission is made after his employment has been terminated.

There was no showing that the usher had any hostility toward his employer or had ceased to be an employee at the time of the admission. Because the topic of conversation was patently within an usher's range of responsibilities, I would favor admission of Mrs. Rudzinski's proffered testimony. Its weight and credibility would be left to the jury.

I am authorized to state that Mr. Justice FAIRCHILD joins in this concurring opinion.